**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFREY JOHNSON, | : | Civil No. 1:22-CV-01280 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, ET AL. *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by Jeffrey Johnson ("Petitioner").  (Doc. 1.)  Following his second

Post Conviction Relief Act ("PCRA") petition being denied as untimely, the court

finds that the instant Section 2254 petition is also untimely.  Therefore, the court

will dismiss the Section 2254 petition and close the case.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background of this case was summarized in the May 4, 2022

decision of the Superior Court of Pennsylvania:

> On October 30, 2017, Johnson pleaded guilty to several crimes
> associated with this docket.  Before sentencing, on February 2, 2018,
> Johnson moved to withdraw his guilty plea, and the trial court granted
> the motion.  He again pleaded guilty, on May 7, 2018, this time to
> burglary and theft by unlawful taking.  *See* Guilty Plea Colloquy, dated
> May 7, 2018. The written guilty plea colloquy form did not list a
> restitution amount.
>
> The day before sentencing, Johnson filed a motion to withdraw his
> guilty plea claiming his innocence and that he was coerced into

pleading guilty. *See* Motion to Withdraw, filed 7/16/18, at ¶ 18. The trial court denied the motion and following a hearing sentenced Johnson to 18 months to 5 years' incarceration and ordered restitution for $10,602.35. *See* Order of Court, filed 7/24/18.

Johnson filed a *pro se* notice of appeal on August 9, 2018. Counsel filed a motion to withdraw as counsel, which the court granted. It then appointed new counsel who filed a Pa.R.A.P. 1925(b) statement. *See* Notice of Appeal, filed 8/9/18; Rule 1925(b) Statement, filed 10/12/18.

Johnson subsequently informed this Court and counsel that he wished to proceed *pro se*. *See* Motion to Withdraw, filed 10/29/18. This Court ordered the trial court to hold a hearing regarding Johnson's request to proceed *pro se* and following the hearing, the court granted Johnson's request and permitted counsel to withdraw. *See* Order, filed 12/17/18.

This Court then permitted Johnson to file an amended Rule 1925(b) statement where he claimed that the trial court erred in denying his motion to withdraw his plea because "he was innocen[t], prosecutorial misconduct, ineffective assistan[ce] of counsel, judicial misconduct." Amended 1925(b) Statement, filed 5/30/19, at ¶ 12. He also asserted that the trial court "abused its discretion in denying [Johnson] a restitution hearing when he objected to it at sentencing." *Id.* at ¶ 14. However, Johnson withdrew his direct appeal on June 28, 2019. *See* Order of Court, filed 7/1/19; Notice of Discontinuance Action, dated 6/28/19.

Johnson filed his first *pro se* PCRA petition on October 21, 2019, arguing that his plea was invalid because he was not told that restitution would be part of the plea agreement and that counsel was ineffective for failing to object to the imposition of restitution. *See* PCRA Petition, filed 10/21/19, at ¶ 54. The court appointed Allen Welch, Esquire and directed counsel to file an amended PCRA petition. *See* In Re: PCRA Petition Order, filed 10/24/19. Counsel did not file an amended PCRA petition. However, Johnson filed a *pro se* amended petition on January 8, 2020, claiming trial counsel coerced him to plead guilty and asserting ineffective assistance of trial counsel. *See Pro Se* Amended PCRA Petition, filed 1/8/20, at 4. The court held a hearing where Attorney Welch represented Johnson. *See* N.T., PCRA Hearing, 1/17/20. It heard testimony from Johnson and his prior attorneys. The court subsequently denied the petition. *See* Order, filed 4/2/20.

Johnson filed two untimely *pro se* notices of appeal from the order denying relief, one dated May 11 and another dated May 27. *See Pro Se* Notice of Appeal, filed 5/11/20; *Pro Se* Notice of Appeal, filed 5/27/20. Johnson withdrew one of the appeals. *See* Notice of Discontinuance of Action, dated 7/1/20; Order of Court, filed 7/6/20. Attorney Welch, as counsel of record, requested that the second appeal be withdrawn, and the discontinuance was granted. *See* Order of Court, filed 7/16/20. Both withdrawals read that the appeal being withdrawn was from the "PCRA order entered 4/02/2020."

*Commonwealth v. Johnson*, No. 292 MDA 2021, 2022 WL 1415699 at *1–2

(Super. Ct. Pa. May 4, 2022).

Petitioner then filed a second PCRA petition on July 7, 2020, acting *pro se*.

(Doc. 10-24.) The following is a summary of the procedural history of the second

PCRA petition:

[Petitioner] argued that "the discovery of counsel's abandonment satisfie[d] the newly discovered fact exception[.]" *Id.* at ¶ 19. He alleged that counsel abandoned him by failing to file a timely notice of appeal from the PCRA court's denial of his first PCRA petition and that he discovered this fact when the Prothonotary's Office supplied him with a copy of the docket entries, on May 29, 2020. He also requested that his appellate rights be reinstated as to his first PCRA petition. *Id.* at 7. However, Johnson did not allege that he asked counsel to file an appeal. Subsequently, Johnson filed a request to remove Attorney Welch and to proceed *pro se*. *See* Request for Withdrawal of Counsel/*Grazier* Hearing, filed 7/23/20. In the motion, he claimed irreconcilable differences with counsel. *Id.*

Later, on August 11, 2020, Attorney Welch filed a Motion to Withdraw as Counsel. He stated that, although counseled, Johnson filed his own notice of appeal from the denial of his first PCRA petition. Motion to Withdraw as Counsel, filed 8/11/20, at ¶ 5. He also stated that shortly after the appeal, the Disciplinary Board of the Supreme Court contacted him regarding complaints of ineffective assistance of counsel received from Johnson. *Id.* at ¶ 6. Counsel contacted Johnson to inform him

that he would be filing a motion to withdraw as counsel. Counsel also stated that he received notice from this Court that Johnson withdrew his appeal. Counsel then stated, "Feeling that the withdrawal of the appeal, which Johnson sought, was a more expeditious way to resolve the matter, undersigned counsel prepared a motion to withdraw under his signature and submitted it." *Id.* at ¶ 9.

The PCRA court held a *Grazier* hearing and granted Johnson's request to proceed *pro se* and permitted counsel to withdraw. Order of Court, filed 8/19/20.

At a hearing on the petition, the court heard testimony from Attorney Welch and Johnson. Counsel testified that he did not file a notice of appeal from the denial of Johnson's first PCRA because he believed that the one issue that had merit, his Recidivist Risk Reduction Incentive ("RRRI") eligibility, had become moot. N.T., PCRA Hearing, 10/8/20, at 5. He explained that Johnson "had already served a sentence in excess of the maximum – or of the minimum sentence without the RRRI application." *Id.* He testified that it had become a moot issue and therefore "it wouldn't change one day in the amount of time that he is sitting in prison on these charges[.]" *Id.* at 6. Counsel testified that he explained this to Johnson in the letters he sent to the Disciplinary Board after Johnson filed his complaint against counsel. *Id.* at 5. He also testified that he did not remember if he explained this to Johnson at the time that he initially raised the issue. *Id.* at 6. Counsel testified that he told Johnson that "if I found law to support your position that you should have been granted RRRI status, I would in fact, file a brief in support of that." *Id.* at 12.

Counsel also testified that at the time Johnson filed his notice of appeal "Johnson wanted me to withdraw as counsel." *Id.* at 8. Based on this request, he testified that he believed that it was better to withdraw the appeal than to go through the process of withdrawing as counsel. *Id.* at 9. He testified that by withdrawing the appeal, he believed that his duties as counsel would have ceased. *Id.*

During cross-examination, Johnson did not ask counsel whether he told Johnson that he was going to file a notice of appeal from the denial of the first PCRA petition or whether Johnson asked him to do so. There also was no discussion regarding the timeliness of the petition.

> Later in December, Johnson also filed a petition to amend his PCRA petition and alleged, among other things, that after the court denied his first PCRA petition, "PCRA counsel stated that he would file [an] appeal on [Johnson's] behalf but failed to do so[.]" Petition for Amend Post Conviction Relief PCRA Petition and Memorandum of Law In Support of Relief, filed 12/23/20, at 24 (unpaginated).
>
> In its opinion, the court did not address the timeliness of the petition and instead addressed the merits of Johnson's claims. The opinion also did not address Johnson's allegation of ineffectiveness regarding Attorney Welch's failure to file a timely notice of appeal. The court concluded that "[Johnson] is attempting to collaterally attack his own decision to withdraw his earlier appeals, and his second PCRA petition should be denied on this basis alone." PCRA Ct. Op., filed 1/28/21, at 6. The court denied the petition and did not reinstate Johnson's appellate rights. *See* Order of Court, filed 1/28/21.

*Johnson*, 2022 WL 1415699 at *2–3. Petitioner then appealed the denial to the Superior Court of Pennsylvania. *Id*., at *3. On May 4, 2022, the Superior Court of Pennsylvania affirmed the denial of the petition because it found the petition to be untimely and the Petitioner had failed to satisfy any time-bar exception. *Id*., at *4.

Petitioner then filed the instant petition for writ of habeas corpus in August of 2022. (Doc. 1.) According to the certificate of service attached to the petition, it was placed in the mail on August 1, 2022. (*Id*., p. 2.) However, it was not received and docketed by the court until August 16, 2022. (*Id*., p. 1.)

The court entered an order directing service on the Respondents on November 18, 2022. (Doc. 6.) Respondents appeared in the action on November 30, 2022, and filed their response to the petition on January 30, 2023. (Docs. 9,

10.)  Petitioner filed his traverse on May 31, 2023.  (Doc. 19.)  The court will now
address the petition.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under
Section 2254 can be filed in either the district where the petitioner is in custody, or
in the district where the petitioner was convicted and sentenced.  28 U.S.C. §
2241(d).  Petitioner was convicted and sentenced in Cumberland County,
Pennsylvania, which is located in this district.  *See* 28 U.S.C. § 118(b).  Therefore,
venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who
were 'grievously wronged' by the criminal proceedings."  *See Dunn v. Colleran*,
247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414,
146 (1998)).  The exercise of restraint by a federal court in reviewing and granting
habeas relief in state court criminal prosecutions is appropriate due to
considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).
"The States possess primary authority for defining and enforcing the criminal law.
In criminal trials they also hold the initial responsibility for vindicating
constitutional rights.  Federal intrusions into state criminal trials frustrate both the
States' sovereign power and their good-faith attempts to honor constitutional law."

*Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

DISCUSSION

Respondents allege that the petition should be dismissed as untimely and because Petitioner has failed to exhaust his administrative remedies. (Doc. 10-1.) However, the court notes a more fundamental potential deficiency in the petition: Petitioner does not appear to be in state custody.

### A. Petitioner Does Not Appear to be in Custody.

Pursuant to 28 U.S.C. § 2254, a person in state custody may file an application for a writ of habeas corpus challenging the fact or length of his or her

7

confinement.  *See Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973); *Tedford v. Hepting*, 990 F.2d 745, 748 (3d Cir. 1993).  This section specifically provides that the person must be in custody pursuant to the judgment of a state court.  *See* 28 U.S.C. § 2254(a).  "[A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition."  *DeFoy v. McCullough*, 393 F.3d 439, 441 (3d Cir. 2005) (citing *Lane v. Williams*, 455 U.S. 624, 631 (1982)).  "This general principle derives from the case or controversy requirement of Article III of the Constitution, which 'subsists through all stages of federal judicial proceedings, trial and appellate . . . the parties must continue to have a personal stake in the outcome of the lawsuit.'"  *Id*. (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)) (omission in original).  However, the "jurisdictional 'custody' requirement can be satisfied by restrictions other than physical confinement."  *Piasecki v. Court of Common Pleas, Bucks Courty, PA*, 917 F.3d 161, 168 (3d Cir. 2019).  "[F]or the purposes of habeas jurisdiction, a petitioner is 'in custody' if he or she files while subject to significant restraints on liberty that are not otherwise experienced by the general public."  *Id.* at 165.  A parolee is considered to be "in custody" for the purposes of seeking habeas relief.  *Jones v. Cunningham*, 371 U.S. 236 (1963).

The petition was mailed from a private address in Rochester, New York. (Doc. 1, p. 18.)  Therefore, at the time of filing, it appears that Petitioner was not

incarcerated.  Additionally, a search of the Pennsylvania Department of

Corrections inmate and parolee locator did not reveal a current inmate or parolee

with Petitioner's name and date of birth[1].  *See* https://inmatelocator.cor.pa.gov/#/

(last searched May 10, 2024).  Typically, the court would enter an order to show

cause for Petitioner to demonstrate that he meets the "custody" requirement, but

due to the age of this petition, the court will address the timeliness of the petition

without making a determination as to whether or not the "custody" requirement has

been met.

### B. The Petition is Untimely Under the AEDPA.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes a one-year limitations period for state prisoners seeking federal habeas

review:

> (1) A 1-year period of limitation shall apply to an application for a writ
> of habeas corpus by a person in custody pursuant to the judgment of
> a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the
>> conclusion of direct review or the expiration of the time for
>> seeking such review;
>>
>> (B) the date on which the impediment to filing an application
>> created by State action in violation of the Constitution or
>> laws of the United States is removed, if the applicant was
>> prevented from filing by such State action;

---

[1] The court retrieved Petitioner's date of birth from the docket sheet of his underlying criminal
conviction found on The Unified Judicial System of Pennsylvania Web Portal,
https://ujsportal.pacourts.us/CaseSearch (last accessed May 10, 2024).  *See Commonwealth v.
Johnson*, No. CP-21-CR-0000602-2017 (Ct. C. Pl. of Cumberland Cnty.).

     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

     (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

Under Pennsylvania law, a defendant who has been convicted and sentenced for a crime, such as Petitioner, has thirty (30) days in which to file a direct appeal, starting from the latter of (a) the date of sentencing, Pa. R. Crim. P. 720(A)(3)), or (b) the date of an order deciding a timely post-sentence motion or acknowledging the defendant's withdrawal of such a timely post-sentence motion, Pa. R. Crim. P. 720(A)(2).  The defendant's judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."  *See* 42 Pa. C.S.A. § 9545(b)(3).

In the instant action, Petitioner withdrew his direct appeal on June 28, 2019. (Doc. 10-13.)  The Superior Court of Pennsylvania recognized the appeal as

10

withdrawn on July 1, 2019.  *See docket Commonwealth v. Johnson*, No. 1306

MDA 2018 (Super. Ct. Pa.); *See Johnson*, 2022 WL 1415699, at *1; *See docket*

*Commonwealth v. Johnson*, No. CP-21-CR-0000602-2017 (Ct. Com. Pl.

Cumberland Cnty.); (Doc. 10-22).  Consequently, direct review of Petitioner's

conviction became "final" on or about July 31, 2019, *i.e,* thirty days after the

Superior Court terminated the direct appeal.  *See* Pa.R. A.P. 1113(a).  Thus, the

one-year limitations period set forth in Section 2244(d)(1) commenced running the

following day, i.e., on August 1, 2019, and Petitioner had one year or until August

1, 2020 to file his Section 2254 petition in this court.  Petitioner, however, did not

file his petition in this court until August 1, 2022 if the court relies on the date of

the certificate of service.  (Doc. 1-1, p. 2.)  This is two years after the one-year

statute of limitations had already expired.  Consequently, the court finds that his

petition is untimely.

However, the court's analysis does not end there. The court must next

determine whether Petitioner is entitled to any statutory or equitable tolling, or

relief under the actual innocence exception.  For the reasons discussed below, the

court finds that Petitioner is entitled to some statutory tolling, but not any relief

under equitable tolling or the actual innocence exception.  However, despite the

statutory tolling, his petition is still untimely.

### 1. Statutory Tolling

With respect to statutory tolling, the court observes that, under Section 2244(d)(2), the one-year limitations period is tolled with respect to "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending[.]" *See* 28 U.S.C. § 2244(d)(2).  Here, the record reflects that Petitioner filed a PCRA petition on October 21, 2019, tolling the one-year limitations period after eighty-one (81) days had elapsed—i.e., counting from August 1, 2019 (when the one-year limitations period initially commenced) to October 21, 2019 (when Petitioner filed his PCRA petition).  (Doc. 10-14.)  The PCRA court denied his request for relief on April 2, 2020.  (Doc. 10-18.)

On May 11, 2020 and May 27, 2020, Petitioner filed *pro se* appeals with the Pennsylvania Superior Court.  (Docs. 10-20, 10-22.)  However, Petitioner, on his own and through his counsel, withdrew these appeals on June 30, 2020 and July 13, 2020, prior to any adjudication by the Superior Court.  (Docs. 10-21, 10-23.)  Respondent asserts that these appeals were untimely.  (Doc. 10-1, pp. 4, 5–6.)

Thus, when Petitioner filed his PCRA petition on October 21, 2019, the one-year limitations period was tolled.  However, the end date of the tolling is an issue the court must resolve.  Respondents argue that the statutory tolling period ended on May 2, 2020.  (Doc. 10-1, pp. 5–6.)  In coming to this conclusion, Respondents assert that the two May 2020 PCRA appeals filed with the Superior Court were

untimely and cites *Pace v. DiGulielmo*, 544 U.S. 408 (2005) as "holding that an untimely petition for collateral relief under the state statute of limitations will not toll the time provision of the AEDPA." (*Id.*) However, the court notes that *Pace* held that when a state court rejects a postconviction petition as untimely, it is not properly filed and does not toll the statutes of limitations. 544 U.S. at 417. When a state court has not "clearly ruled" on the timeliness of a state petition, it is the responsibility of the habeas court to consider whether the state postconviction petition was timely filed as a matter of state law before tolling the AEDPA limitations period. *Carey v. Saffold,* 536 U.S. 214, 226–27, (2002) (remanding federal petition to Ninth Circuit, when California courts had not clearly ruled on timeliness of state petition, for consideration of whether state petition timely as matter of California law and consequently "properly filed" for purposes of AEDPA statutory tolling). The May 2020 appeals were withdrawn, and the state court did not rule on the timeliness of the petition. Therefore, the court is left to consider the timeliness of the appeals.

The May 11, 2020 notice of appeal states that "[o]n or about 4/25/20 Petitioner attempted to file this same Notice of appeal requesting that you except this hand written form as for a notice of appeal." (Doc. 10-20, p. 2.) The verification section of the notice of appeal is dated April 27, 2020. (*Id.*, p. 5.) Pennsylvania recognizes the prisoner mailbox rule, that a prisoner's *pro se* appeal

is deemed filed at the time it is given to prison officials or put in the prison mailbox. *See Com. v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997). However, at the time the appeals were filed, Petitioner was represented by Attorney Welch. Therefore, the prisoner mailbox rule will not be applicable, and the appeal was untimely. As such, it did not toll the statute of limitations, and May 2, 2020 (thirty-days after the April 2, 2020 PCRA denial) is the end of the tolling period. *See* PA. R.A.P. 903(a) (providing that a petition for allowance of appeal to the Pennsylvania Superior Court shall be filed within thirty (30) days after the entry of the trial court's dismissal of Petitioner's PCRA petition).

Petitioner's second PCRA petition filed on July 7, 2020 does not toll the Section 2244(d)(1) deadline because the Superior Court found it to be untimely. *Pace*, 544 U.S. at 417 (Finding that a PCRA petition that is rejected by a state court as untimely or for lack of jurisdiction is not "properly filed" for § 2244(d)(2) purposes and therefore will not toll AEDPA's statute of limitations.).

Consequently, because Petitioner's Section 2254 petition was not filed in this court until August 1, 2022 (the date the petition was placed in the mail), statutory tolling does not overcome the untimeliness of his petition. Therefore, the court turns to the question of whether the one-year limitations period set forth in Section 2244(d)(1) is subject to equitable tolling or whether Petitioner is entitled to relief under the actual innocence exception.

14

### 2. Equitable Tolling

"Equitable tolling is available 'only when the principle of equity would make the rigid application of a limitation period unfair.'" *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (quoting *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003)). For that reason, "[a] petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some 'extraordinary circumstance stood in his way.'" *See id*. (quoting *Pace*, 544 U.S. at 418). Equitable tolling may be appropriate if: (1) the petitioner has been "actively misled[;]" (2) the petitioner "has in some extraordinary way been prevented from asserting his rights;" or (3) the petitioner "has timely asserted his rights mistakenly in the wrong forum." *See id*. (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)).

Here, Petitioner alleges that he clearly desired to appeal the PCRA court's denial of the petition, as demonstrated by his *pro se* appeals, and his attorney failed to do so. (Doc. 19, p. 8.) While this may appear to fall under the "misled" title, Petitioner withdrew his May 27, 2020 *pro se* appeal, Doc. 10-23, and he fails to explain how his election to withdraw his appeal amounted to him being misled.

Petitioner also alleges that his second PCRA petition should amount to equitable tolling itself. (Doc. 19, p. 8.) While this potentially falls under the "timely asserted his rights mistakenly in the wrong forum," Petitioner

demonstrated that he was well aware of the appropriate forum when he filed the two appeals from the PCRA denial.  However, the court agrees with the trial court's determination that Petitioner is seeking to collaterally attack his own decision to withdraw his earlier appeals.  Equitable tolling is for extraordinary circumstances and not for a mere change of heart.  Therefore, the court finds no equitable tolling in this case and turns to whether the actual innocence exception allows Petitioner to overcome the time-bar to his Section 2254 petition.

### 3.  Actual Innocence

The court begins with the basic legal tenet that the actual innocence exception "applies to a severely defined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  *See McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  Thus, relief under this exception is exceedingly rare, *see id*. at 386, and the standard for establishing actual innocence is an exacting one, *see id*. at 401.  The standard demands "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See Schlup*, 513 U.S. at 324.  Accordingly, a habeas corpus petitioner has not met this standard "'unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

16

a reasonable doubt.'"  *See McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

"Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  *Schlup*, 513 U.S. at 324; *Sistrunk v. Rozum*, 674 F.3d 181, 192 (3d Cir. 2012) (explaining that "*Schlup* sets a supremely high bar").  Thus, "[p]roving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner."  *See id*. at 191 (citations omitted).  All three of these factors are necessary for a habeas corpus petitioner to be entitled to relief under the actual innocence exception.  *See id*.  And if ultimately proven, this exception "serves as a gateway through which a petitioner may pass" even though the statute of limitations has expired.  *See McQuiggen*, 569 U.S. at 386.

Accordingly, in order for Petitioner to have demonstrated that he was entitled to pass through this gateway exception based upon his actual innocence, he was required to establish as a factual matter that, in light of new reliable evidence, no juror acting reasonably would have found him guilty of the crimes for which he was convicted.  The court, having carefully reviewed this matter, ultimately finds that Petitioner has not made this threshold showing.  In fact, from what the court can discern, Petitioner has not asserted actual innocence, much less shown actual

innocence. (Docs. 1, 19.) Thus, for all of these reasons, the court concludes that Petitioner has not met his burden of proof that he is entitled to relief under the actual innocence exception. *See House v. Bell*, 547 U.S. 518, 538 (2006) (stating that "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case" (citations omitted)).

Therefore, the petition is untimely, not subject to sufficient tolling, and will be dismissed.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

18

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

CONCLUSION

For the above stated reasons, the petition filed pursuant to Section 2254 will be dismissed as untimely and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 9, 2024